People of Porto Rico, Plaintiff and Appellee, *v.* Pablo Díaz, known also as Laureano and Nano Díaz, Defendant and Appellant.

No. 2460.   Argued November 4, 1925.—Decided June 10, 1926.

534

*Francisco Cervoni* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

The evidence examined at the trial of this case shows clearly that at about 2 p. m. of October 28, 1923, near Las Piedras a Ford automobile driven by José Antonio Rodríguez struck and injured José Díaz, who was taken by the said driver to Las Piedras for treatment; that not finding a physician there, Rodríguez decided to take the injured man to Humacao for treatment; that although the said automobile was carrying five persons, Pablo Díaz, known also as Laureano Díaz and Nano Díaz, not a relative of the injured man, attempted to board the car and ride to Humacao; that he was not allowed to do so by José Antonio Rodríguez, who ordered him to get off, saying that he was an intruder; that at about four o'clock of that same afternoon Nano Díaz was seen going from Las Piedras to Humacao where, between five and six o'clock, he asked several persons to sell or lend him a revolver, saying to some of them that he had had a quarrel with José Antonio Rodríguez and wanted it in order to revenge himself; that having procured a pistol, on that night between eight and nine o'clock while José Antonio Rodríguez was near his car at a gasoline garage in Humacao, Nano Díaz suddenly fired a shot at him with the pistol from behind and another shot when Rodríguez turned around; that one of the bullets penetrated his abdomen as a result of which he died two hours later.

For the commission of that act Nano Díaz was charged with murder in the first degree and, on a verdict of guilty by the jury of murder in the second degree, was sentenced by the trial court to twenty-five years in the penitentiary, whereupon he took the present appeal.

As an introduction to the argument on the errors assigned the appellant states that for the first time he raises the

question that the indictment found against him does not state facts sufficient to constitute the crime of murder.

The wording of the indictment is, in part, that the defendant, "unlawfully, wilfully, and with malice aforethought and the firm and deliberate intent to cause unlawful death, committed assault and battery with a pistol, which is a deadly weapon, upon a human being named José Antonio Rodríguez, at whom he fired several shots, one of the bullets penetrating his abdomen, as a result of which José Antonio Rodríguez died a few minutes later." The appellant contends that this indictment is insufficient because it must charge that the death was unlawfully caused and not that the defendant had the intent to cause "unlawful death," since such kind of death does not exist. He also contends that the other averments, except those relative to the crime of assault and battery, are conclusions of law.

█ Murder, according to section 199 of the Penal Code, is the unlawful killing of a human being with malice aforethought. And as the words "unlawful death" used in the indictment convey the same idea suggested by the phrases "to kill unlawfully" or "the unlawful killing," we can not hold that its use renders the indictment insufficient. The other words "malice aforethought" and "the firm and deliberate intent to cause death" are taken from the Penal Code and their use does not render the indictment defective.

Of the sixteen assignments of error set up by the appellant the first fourteen refer to the alleged improper admission of evidence; another to the refusal to grant a motion for peremptory acquittal, and the last pleads that if the defendant did commit the act as charged, he was not responsible.

In the first assignment it is alleged that the testimony of Dr. César Domínguez for the prosecution should have been stricken out.

█ That testimony refers to the treatment given to José Díaz, the person who was injured by the automobile, and

even though it is not necessary in this case because it has no connection with the commission of the crime by the. defendant, it can not be held that its admission constituted prejudicial error.

The ground of the second assignment is that just after the district attorney had shown to witness Juan Rivera two written statements made by him the district judge overruled a motion made by the appellant's counsel that said written statements be presented to the jury for their examination, stating that if the defense wanted the jury to examine them it could do so when the time to offer its evidence should arrive.

That witness was the one who saw the defendant fire the shots at the victim and followed him for some time, and as the defense attempted to show by cross-examination that on former occasions this witness had testified differently, he replied to other questions put to him by the district attorney that on the night of the occurrence he testified at the police station before the municipal judge and that he ratified the said testimony some days later, both statements being the same. Upon having been shown a document by the district attorney, and having stated that said document contained the testimony which the witness gave and signed before the prosecuting attorney at the police station, the defense objected and the district attorney withdrew his question. The defense then stated that both statements should be offered in evidence to be given by the jury the consideration that they deserved.

As may be seen, due to the objection raised by the defense, the witness did not reply to the questions concerning these written statements, which were not shown to him to refresh his memory; therefore, the attorney was not bound to introduce them in evidence. And since no question was put to the said witness as to the facts contained in the said

statements, section 161 of the Law of Evidence has not been infringed. The assignment, therefore, is without merit.

The third assignment is that it was error "to allow the prosecuting attorney to offer in evidence as dying declarations certain statements said to have been made by the deceased José Antonio Rodríguez."

■ The appellant does not assign error on the ground that it was not shown that when José Antonio Rodríguez made the statements attributed to him by the witnesses he knew that his death was imminent, but on the ground that such evidence is inadmissible. But the admissibility of dying declarations in criminal cases has been sustained by this court in the cases of *People* v. *Morales, alias Yare Yare,* 14 P.R.R. 227, *People* v. *Berríos,* 23 P.R.R. 772, and others, the reason therefor being clearly explained in Wharton's Criminal Evidence, vol. 1, page 540.

The grounds of the fourth assignment are that Dr. Segarra was allowed to answer a question put to him in respect to José Antonio Rodríguez's sanity and for the reason that his entire testimony was not stricken out.

■ Dr. Segarra testified that on the night of the shooting he went to the hospital because he was informed that a wounded man was being taken there; that on the operating table he found José Antonio Rodríguez; that his chest and liver had been penetrated by a bullet; that the bullet wound was necessarily fatal; that the said Rodríguez was at the time short of breath, perspiring freely, fatigued, and his pulsation was weak; that the wound inflicted upon him was attended by a copious hemorrhage; that the hepatical artery and the porte vein were ruptured, wherefore the wound was deadly; that he died after the operation. This witness was asked to state, in view of the description he had just given, his opinion as to "the patient's knowledge of whether his death was near," to which the defense objected on the ground that

"no physician knows anything positive concerning a wounded person's expectation of immediate death or hope of recovery." The answer was that in the circumstances a man may be presumed to believe that he is about to die or that he will recover, but that a physician considers it an almost hopeless case because immediate death is expected.

■ Although the tendency of the question was to obtain from the physician his opinion as to the victim's belief respecting his approaching death, in view of the circumstances pointed out, from which a jury or judge may infer such belief, the admission of such testimony was not prejudicial to the defendant, because, as already stated, the witness did not answer positively what the victim's belief was.

The fifth assignment is that the testimony of Dr. López del Valle relative to statements made by the wounded man to another should have been eliminated.

■ Dr. López del Valle was one of the physicians who operated on José Antonio Rodríguez. He testified that when the victim recovered consciousness he heard him say to a gentleman who was by his side that he felt very sick; that he was dying. The defense objected to the admission of that testimony, saying that the person to whom the statements above referred to were made was the only person competent to testify as to them at the trial, and moved that it be stricken out.

It was not error, for though the statements were not made to Dr. López del Valle, they were heard by him when made by Rodríguez to another.

Section 233 of the Code of Criminal Procedure empowers a trial court to exclude from the court-room, while a witness is being examined, all other witnesses who have not testified; but since this is a discretional power, the fact that a witness may have heard the testimony of other witnesses is no

ground for holding that the lower court should have refused to admit his testimony.

It is further alleged that the testimony of Rafael B. Díaz should not have been admitted because the statements to which it referred were not dying declarations.

■ This witness testified that when Rodríguez was on the operating table in great distress he, feigning to ignore the seriousness of his wounds, asked him how he felt, to which Rodríguez answered: "Oh, Captain! I am dying; Nano Díaz has killed me." Then in a low and feeble tone of voice he gave to him a description of the defendant. This testimony shows that Rodríguez knew that he was about to die, wherefore it is admissible, apart from the fact that other testimony given prior to this shows that the victim stated to one of the physicians who was about to operate on him: "Doctor, do your best, I will pay you for it"; that he said to another person, "I will die; I feel very bad"; that to a friend of his he said: "Cádiz, don't let me die."

After Dr. Segarra had testified about Rodríguez's wounds, the district attorney asked him: "What do you say, Doctor, about a person whose pulsation is weak and whose liver, diaphragm and one of the lungs have been injured by wounds inflicted upon him in the abdominal regions which, consequently, have also injured the porte vein and the hepatical artery?".

The defense objected on the following grounds: First, because the tendency of the question was to show that the victim was seriously injured, that being a matter proper for the jury to decide; because it is not sufficient that a physician be of the opinion that a person is seriously injured, since it is a prerequisite to the admission of testimony respecting statements made by a wounded person that he himself knows that his death is near. It is now alleged that it was error to admit the physician's answer.

A physician is competent to testify as to whether or not

a wound is mortal. And although it is true that the victim must be conscious of the approach of death in order that his statements at the time may be admissible, the physician's testimony can not be held to be prejudicial because the evidence as a whole shows that the victim knew his situation.

The ground for the ninth assignment is that the testimony of some witnesses in respect to having heard José Antonio Rodríguez say that he was wounded by Laureano Díaz was not stricken out.

■ Before the witnesses in question testified as to what they had heard, others had testified that José Antonio Rodríguez knew that his death was near at the time, and the fact that they did not testify as to this fact does not render their testimony inadmissible.

■ It is not error to allow certain witnesses to testify about the clothes worn by the defendant on the night of the occurrence when his clothes had been described by the witness who followed him immediately after the commission of the crime and identified by him and other witnesses after the arrest of the defendant.

■ A witness testified that when he stopped the defendant on the road from Humacao to Las Piedras on the night of the occurrence he saw him on foot, moving along hastily, somewhat tired and sweating. This testimony is neither inadmissible nor prejudicial, for these facts are derived from the witness's own senses.

The fifteenth assignment is on the ground that a motion for a peremptory acquittal, presented on the ground that the evidence was insufficient just after the prosecuting attorney had closed his case, was overruled.

There is no error, for the prosecuting attorney showed that the crime was committed by the defendant by clear, precise and ample evidence.

The last assignment is that the verdict rendered is contrary to the facts.

In order to establish that the defendant was not responsible for the crime for which he was indicted in October of 1923, evidence was adduced tending to show that five years before the commission of the crime the defendant, who was at the time suffering from cyclical melancholy and had been secluded in an insane asylum from which he was released a month later because he had recovered; that under normal conditions the defendant is sane, but as soon as he is annoyed he suffers fits of madness from which he recovers after he is revenged. The facts which determined the defendant's seclusion in the said asylum were also shown.

The weighing of the evidence was a proper function of the twelve men who constituted the jury and their conclusions of fact can not be rejected by us unless there is manifest error on their part. This is not now the case, since the fact that the defendant was shown to have been insane on a remote date was no ground for adopting the expert's opinion that the defendant, whenever annoyed, suffered fits of madness accompanied by an uncontrollable desire for vengeance.

The judgment appealed from should be affirmed.